687 A.2d 362

JEFFREY WILLIAMSON, PLAINTIFF, v. CNA INSURANCE COMPANY, DEFENDANT.

Superior Court of New Jersey
Law Division (Civil)
Atlantic County

September 13, 1996.

*Scott E. Diamond* (*Manchel, Lundy & Lessin* ), for plaintiff.

*Jane A. Kenney* (*LaBrum & Doak* ), for defendant.

## OPINION

DONIO, J.S.C.

This matter comes before the court on an order to show cause to compel the defendant, CNA Insurance Company to submit to UIM arbitration. This is an *Aubrey v. Harleysville Ins. Co.*, 140 *N.J.* 397, 658 *A.*2d 1246 (1995), type of case dealing with UIM insurance.

The facts of the case are not really in dispute. The matter arises out of a motor vehicle accident which occurred on August 26, 1989, in Atlantic City, New Jersey. At that time, a step van operated by plaintiff, Jeffrey Williamson (Williamson) collided with an automobile operated by David Nasrin (Nasrin). At the time of the accident, Williamson was a high school student 17 years of age who lived with his mother, Eileen Williamson, and was insured under his mother's personal automobile policy which was issued by Allstate Insurance Company (Allstate). The step van operated by Williamson at the time of the accident was owned by his employer, Ronald Beaver (Beaver) and insured under a business auto policy issued by the defendant, CNA Insurance Company (CNA). The automobile operated by Nasrin was a rental vehicle leased by

Frederick Carozza, and insured under Carozza's personal auto policy issued by Allstate.

Plaintiff settled his personal injury action against Nasrin for $100,000, which was the maximum amount available under Carozza's Allstate policy and now seeks UIM benefits under Beaver's CNA policy which carried UIM limits of $300,000. Plaintiff filed an order to show cause to compel CNA to proceed to UIM arbitration. Defendant CNA filed opposition to the order to show cause stating that plaintiff Williamson is not entitled to UIM benefits under the CNA policy issued to Beaver as the named insured for his bread delivery business.

The issue thus presented is whether or not a minor plaintiff who does not own his own automobile and is insured under his mother's automobile policy is limited to UIM coverage under that policy or whether he can seek the benefit of his employer's automobile policy when involved in an accident driving his employer's vehicle as a permissive user.

The Allstate policy that covered Williamson through his mother provided UIM coverage in the amount of $50,000. The CNA policy that provided coverage on the vehicle in which Williamson was driving contained UIM coverage in the amount of $300,000. CNA opposes the application for an order to show cause to compel the UIM arbitration by arguing that *Aubrey* prohibits plaintiff Williamson from seeking UIM benefits under the CNA policy. Plaintiff Williamson argues that the facts of this matter are distinguishable from *Aubrey* and that *Aubrey* does not control the resolution of this issue.

In *Aubrey,* the injured claimant had purchased her own automobile insurance, including an UIM endorsement providing coverage of $15,000/$30,000. *Aubrey* was injured while operating a vehicle that she intended to purchase from Chris Koch Toyota after securing a financing arrangement. *Id.* at 399, 658 *A.*2d 1246. *Aubrey* contended that she was entitled to recover UIM benefits under the UIM provisions of the Koch garage policy, which provided $1,000,000 in UIM coverage. The court denied *Aubrey's*

claim and concluded that the amount of UIM coverage held by her as the person seeking recovery was $15,000.

> Accordingly, she could reasonably expect UIM coverage in that amount. When she purchased her UIM coverage, Aubrey could not reasonably have anticipated the possibility of receiving benefits under UIM endorsements issued in favor of Koch. To allow her to recover under Koch's UIM policy would distort the meaning of an insured's "reasonable expectations."
>
> [*Id.* at 404, 658 *A.*2d 1246.]

To determine the scope of coverage under an insurance policy one must initially look at the plain language of the policy. The pertinent part of Beaver's CNA policy under definitions of WHO IS INSURED states as follows:

> (2) anyone else as an insured while using with your permission a covered auto you own, hire or borrow . . .

The closest factual analysis to the present case is *Prudential Property and Casualty Ins. Co. v. Travelers Ins. Co.,* 264 *N.J.Super.* 251, 624 *A.*2d 600 (App.Div.1993). In that case, the injured claimant, Chris Tucci, was employed as a police officer by the Borough of Roselle Park. Tucci was also insured under a personal insurance policy that contained an UIM endorsement providing coverage in an amount of $100,000. The Borough's police vehicle was insured with an UIM endorsement providing coverage in an amount of $1,000,000. Tucci was injured when his Borough police vehicle collided with a negligent driver causing him serious personal injury. Defendant's automobile policy contained coverage in an amount of $15,000 per person/$30,000 per accident.

> *Prudential* stated as follows:
>
> Although the legislature was aware that "multiple policies" might provide UIM coverage, [N.J.S.A. 17:28–1.1(c) ], it specifically provided that to determine whether a motor vehicle was underinsured, the limits of liability for that vehicle should be compared against the UIM limits of the motor vehicle insurance policy "held by the person seeking that recovery" rather than with respect to the limits of any other policies that may apply to the benefit of the claimant. *See N.J.S.A.* 17:28–1.1(e).
>
> [*Id.* at 259, 624 *A.*2d 600.]

The court also held:

> The expectation of an insured, such as Tucci, who purchases a policy of insurance containing UIM coverage is that he is buying such protection up to the declared limits primarily for himself and anyone else who is an insured on the same basis

under the policy. [*Clegg v. Auto Full Underwriting* ] 254 *N.J.Super.* 634, 640 [604 *A.*2d 179] (App.Div.1992). Any other policy of insurance which affords him coverage necessarily does so on the basis of his status *as a third party beneficiary of the contract of insurance between the insurer and the purchaser of the policy.* [*Prudential* at 260, 624 *A.*2d 600. (emphasis added) ]

Whether or not an employee is to be considered a third party beneficiary of the contract of insurance between the insurer and the purchaser (employer) of the policy is also an issue to be determined on a case by case basis depending upon the pertinent policy language.

A recent Appellate Division decision *Market Transition Facility of New Jersey By and Through its servicing carrier Amgro Ins. Co. and State Farm Ins. Co. v. Parisi–Lusardi* 293 *N.J.Super.* 471, 681 *A.*2d 660 (App.Div.1996) [hereinafter *Amgro* ], decided on September 4, 1996, attempts to reconcile *Aubrey* type cases and clarify some factual distinctions not addressed by *Aubrey*.

In *Amgro,* defendant, Teresa Parisi–Lusardi (Lusardi) resided with her paramour, Vito Moles in the home of her brother, Frank Parisi (Parisi). Lusardi *did not own* a motor vehicle either registered in this state or principally garaged in this state and she therefore was not required to obtain automobile insurance. Lusardi was driving Moles' automobile with his permission. Moles' automobile was insured under a liability policy issued by State Farm. Moles' policy contained a UIM endorsement selected by him of $100,000 per person. At the time of the accident, Lusardi's brother, Parisi, was insured under a policy issued by the MTF by and through Amgro. Parisi's policy contained an UIM endorsement selected by Parisi providing underinsurance benefits of $100,000. Lusardi collided with a motor vehicle operated by David Pacuta, a tortfeasor also insured by Amgro which policy provided minimal coverage of $15,000 per person. As a result of the severe injuries sustained, Lusardi asserted claims against State Farm and Amgro. Amgro on behalf of Pacuta offered to settle Lusardi's claim for $15,000 which settlement was ultimately accepted. Lusardi thereafter asserted a claim against State Farm and Amgro for underinsurance benefits under the endorsements

to the respective policies issued to Moles and Parisi. Both insurers refused to submit the claim to arbitration. Lusardi filed a motion to compel both insurers to submit her underinsurance claim to arbitration. The trial judge granted the summary judgment to State Farm and Amgro and plaintiff Lusardi appealed. *Id.* at 474, 681 *A*.2d 660.

*Amgro* noted that the common theme in *Aubrey, Landi v. Gray,* [228 *N.J.Super.* 619, 550 *A*.2d 768 (App.Div.1988) ], *Clegg,* and *Prudential* was that each injured claimant had selected a UIM endorsement when purchasing their own policy of insurance and each UIM endorsement provided coverage less than the UIM coverage on a policy against which a claim was asserted. That common distinction was absent in *Amgro* as well as in this case. *Amgro,* at 481, 681 *A*.2d 660.

The Appellate Division noted in *Amgro:*

Plaintiff neither owned an automobile on the day she was injured in an automobile accident nor maintained in her name a policy of automobile liability insurance containing an endorsement providing UIM coverage.

Had plaintiff owned her own automobile, she clearly would have been required to purchase a comprehensive automobile liability policy. See *N.J.S.A.* 39:6B-3. Her prospective insurer would have been required to provide plaintiff with an option to purchase optional UIM coverage. See *N.J.S.A.* 17:28-1.1b. In turn, plaintiff would have either elected to purchase UIM coverage or she would of rejected that opportunity. Her election would have been hers, *personal unto herself.* In overruling *Landi,* [228 *N.J.Super.* 619 (App.Div.1988) ], *Aubrey* would dictate that conclusion. Although not expressly stated in *Aubrey,* we conclude that, had plaintiff elected not to purchase optionally UIM coverage, that election would also bar her recovery of UIM benefits under Parisi's policy.

[*Amgro* at 481-82, 681 *A*.2d 660. (emphasis added) ]

In conclusion the Appellate Division said:

*Aubrey* left uncertain, however, whether it was intended to disqualify entitlement to UIM coverage to those individuals who, like plaintiff, do not own an automobile either registered or principally garaged in New Jersey. We think not. The issue was not raised in *Aubrey* and as we construe that opinion, the issue does not seem to be answered therein. *Id.*

In the present case, Williamson did not own an automobile and never had the opportunity to select his own insurance coverage with a specific opportunity to elect optional UIM coverage with a specified coverage limit. That coverage inured to him through his

mother with whom he lived at the time of the accident. As indicated in *Amgro,* the individual selection clearly allows optional UIM coverage to be deemed "personal" to the insured. *Id.* at 482, 681 *A.*2d 660.

On the other hand, when Beaver applied for, purchased, paid for, and insured his company van with UIM coverage, it was his reasonable expectation that employees such as Williamson would be an intended third party beneficiary of such coverage even though Williamson was not specifically named in any endorsement to the insurance policy. Williamson was a permissive user of the van for the benefit of Beaver. One cannot argue with merit that an employer (Beaver) would not expect to cover an employee driving his company vehicle, but only cover the three people named in the endorsement. The language of the policy covered Williamson as a person who used Beaver's van with his permission under the terms of the policy. Clearly, Williamson was an intended beneficiary of the UIM coverage secured by Beaver through CNA, as a permissive user for the benefit of Beaver.

As the court noted in *Amgro:*

> *Aubrey* did not focus on the claim of an injured party who does not own an automobile registered or principally garaged in New Jersey and who therefore has never had the opportunity to elect to purchase UIM coverage. We cannot conclude that the Supreme Court intended to exclude these individuals, such as Lusardi, from the protections afforded by UIM coverage. *Id.* at 484, 681 *A.*2d 660.

Furthermore, one may argue in this case that there is confusion over whom the policy of insurance of CNA was intended to cover. Such argument must also fail because of the well known principals of insurance contract law.

> Because of the unique nature of contracts of insurance, courts assume "a particularly vigilant role in ensuring their conformity to public policy and principals of fairness." *Voorhees v. Preferred Mut. Ins. Co.,* 128 *N.J.* 165, 175, 607 *A.*2d 1255 (1992). To further that end, New Jersey courts often have construed ambiguous language and insurance policies in favor of the insured and against the insurer. *Sears Mortgage Corp. v. Rose,* 134 *N.J.* 326, 347, 634 *A.*2d 74 (1993); *Walker Rogge, Inc. v. Chelsea Title and Guar. Co.,* 116 *N.J.* 517, 529, 562 *A.*2d 208 (1989); *Sandler v. New Jersey Realty Title Ins. Co.,* 36 *N.J.* 471, 479, 178 *A.*2d 1 (1962); *Matits v. Nationwide Mut. Ins. Co.,* 33 *N.J.* 488, 495, 166 *A.*2d 345 (1960); *Hunt v. Hospital Service Plan,* 33 *N.J.* 98, 102, 162 *A.*2d 561 (1960). Consistent with that

principal, courts also have endeavored to interpret insurance contracts to accord with the objectively reasonable expectations of the insured.

[*Doto v. Russo*, 140 *N.J.* 544, 556, 659 *A*.2d 1371 (1995).]

Construing *Aubrey* with the distinctions announced by *Amgro* leaves the court to conclude that Williamson is entitled to UIM benefits under Beaver's CNA policy as a permissive user of Beaver's vehicle for the benefit of his employer Beaver. This is especially noted in light of the fact that Williamson did not own his own automobile at the time of the accident or ever had the opportunity to choose UIM limits on his own accord.

The matter shall proceed to UIM arbitration under the terms of the CNA policy.