743 A.2d 386

CNA INSURANCE COMPANY, PLAINTIFF–RESPONDENT, v. WENDY J. CANNING, DEFENDANT, AND ANTHONY CIRRINGIONE, DEFENDANT–APPELLANT.

CONTINENTAL INSURANCE COMPANY, PLAINTIFF–APPELLANT, v. JAMES E. HUEBNER, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 1, 1999—Decided January 19, 2000.

Before Judges KING and PAUL G. LEVY.

*Mati Jarve,* argued the cause for appellant Anthony Cirrigione (*Garber, Kastein, Jarve & Mullen,* attorneys; *Brian T. Reagan,* on the brief).

*John C. Simons,* argued the cause for respondent CNA Insurance Company and appellant Continental Insurance Co. (*Hoagland, Longo, Moran, Dunst & Doukas,* attorneys; *Mr. Simons,* on the brief).

*MaryEllen McGugan,* argued the cause for respondent James E. Huebner (*Flynn Austin & Associates,* attorneys; *Ms. McGugan,* of counsel and on the brief).

*Mary Ann Bryant,* appeared for amicus curiae Association of Trial Lawyers of America–New Jersey Chapter (*Friedman, Bafundo & Porter,* attorneys; *Robert A. Porter,* on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

On January 22, 1995, Anthony Cirringione was injured when the automobile he was driving, owned by Cheryl Kudrna, collided with a vehicle driven by Wendy Canning. He sued Canning and learned during discovery, that her liability insurance policy had a limit of $100,000. Cirringione's own policy had a $50,000 limit for liability coverage (and thus the same amount for underinsured motorist coverage (UIM)). Kudrna's car, considered the host vehicle for Cirringione, had a liability limit of $500,000 insured by CNA Insurance Company. Cirringione asserted that Canning, the tortfeasor, was underinsured by $400,000, the difference between the host's coverage and the tortfeasor's, and sought UIM coverage from the host's insurer, CNA. CNA denied coverage because Cirringione's personal coverage was less than the tortfeasor's.

On September 20, 1995, James Heubner was operating a car owned by Jane McConnell, and he was injured when that car collided with another operated by Francis Ellis and owned by Susan Little. Heubner had $15,000 coverage on his own policy

issued by Prudential Insurance Company. McConnell, owner of the host vehicle, had $300,000 coverage with Continental Insurance Company, and Little, the alleged tortfeasor, had $25,000/$50,000 coverage with Newark Insurance Company. Thus, Heubner asserted that Little was underinsured by $275,000, the difference between the host's coverage and the tortfeasor's, and sought UIM coverage from the host's insurer, Continental. Continental denied coverage because Heubner's liability limit was less than the tortfeasor's.

Each insurance company filed a declaratory judgment action. CNA succeeded on its motion for summary judgment but Continental did not. Cirringione and Continental each appealed and we ordered the appeals consolidated because the issues are practically identical.

■ The CNA policy defines a "covered person" for underinsured motorist coverage purposes as:

1.  You or any family member.
2.  Any other person occupying your covered automobile.
3.  Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

The Continental policy is quite similar:

1.  Covered person means:

c.  Any [ ] person occupying an insured motor vehicle with your consent, except when struck by, a vehicle owned by you or that person which is not insured for this coverage under this policy.

It is undisputed that each driver occupied the host's covered vehicle and did so with the host's consent. Each policy provides underinsured coverage benefits to a "covered person" in clear unambiguous language.

■■ Our Supreme Court considered similar claims, first in *French v. New Jersey School Bd. Assn.*, 149 *N.J.* 478, 694 *A.*2d 1008 (1997), and then in three cases the next year: *Magnifico v. Rutgers Casualty Ins. Co.*, 153 *N.J.* 406, 710 *A.*2d 412 (1998); *New Jersey Manufacturers Ins. Co. v. Breen*, 153 *N.J.* 424, 710 *A.*2d

421 (1998); and *Grant v. Amica Mutual Ins. Co.*, 153 *N.J.* 433, 710 *A.*2d 426 (1998). Those cases provide that "once the threshold test for a UIM claim has been met," the insured can seek coverage under all other policies under which he or she might be insured. *French, supra,* 149 *N.J.* at 495, 694 *A.*2d 1008; *Magnifico, supra,* 153 *N.J.* at 415, 710 *A.*2d 412. The "threshold test" intended by the Supreme Court is whether the injured party "held" [1] the host's policy, and that is determined by looking to whether the host's policy was "actually purchased by or purchased for the benefit of the prospective UIM claimant." *French, supra,* 149 *N.J.* at 485, 694 *A.*2d 1008; *Aubrey v. Harleysville Ins. Cos.*, 140 *N.J.* 397, 404, 658 *A.*2d 1246 (1995).

■ The insurance companies contend that each driver owned another insured automobile with liability coverage, so neither host could have intended to have its insurance policy cover a "fortuitous occupant" such as Cirringione and Heubner. The companies seek to distinguish the factual situations of *French* (an employee of the host) and *Breen* and *Grant* (a resident relative of the host) from those of these two cases on appeal. We disagree and hold that the same result applies here where the policy explicitly covers "any person" occupying the host's insured vehicle. The concept of the fortuitous driver comes from *Taylor v. National Union Fire Ins. Co.*, 289 *N.J.Super.* 593, 674 *A.*2d 634 (App.Div.1996), which was effectively overruled by the 1998 Supreme Court trilogy. Once an insurer issues a policy insuring all occupants, any occupant can claim that the coverage of that vehicle is coverage "held" by that occupant.

---

[1] The uninsured motorist statute provides:

[a] motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy *held* by the person seeking that recovery. [*N.J.S.A.* 17:28–1.1(e)(emphasis supplied)].

The insurance companies drafted these contracts of adhesion, and thus any ambiguities should be resolved in favor of the insureds. *Meier v. New Jersey Life Ins. Co.*, 101 *N.J.* 597, 611, 503 *A.*2d 862 (1986). In doing so, we recognize that we must interpret policies to afford coverage "to the full extent that any fair interpretation will allow." *Kievit v. Loyal Protective Life Ins. Co.*, 34 *N.J.* 475, 482, 170 *A.*2d 22 (1961) (citations omitted). The contract language drafted by these insurance companies is clear and unambiguous in providing coverage for any person occupying the host insured's motor vehicle. We will not undertake to write a new policy or exclude language from an existing policy to benefit the insurer. *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 *N.J.* 517, 529, 562 *A.*2d 208 (1989). We are simply holding these insurance companies to the contracts they drafted and signed.

Accordingly, we reverse the summary judgment granted to CNA in A–410–98T3, and we affirm the summary judgment granted to Heubner in A–3947–98T5.